MEMORANDUM **
1. Plaintiff-Appellee the National Abortion Federation (“NAF”) is a non-profit professional association of abortion providers whose mission is “ensuring] safe, legal, and accessible abortion care.” NAF conducts annual meetings of its members and invited guests which are not open to the public. All meeting attendees must sign confidentiality agreements before obtaining meeting materials and access to the meeting areas.
2. The individual Defendants-Appellants are anti-abortion activists. Defendant-Appellant David Daleiden founded the Center for Medical Progress (“CMP”) and later created the “Human Capital Project” to “investigate, document, and report on the procurement, transfer, and sale of fetal tissue.”
3. In order to obtain an invitation to attend NAF’s 2014 and 2015 annual meetings, the individual defendants misrepresented themselves as representatives of a company, BioMax Procurement Services LLC (“BioMax”), purportedly engaging in fetal tissue research. Daleiden—purport-ing to be a BioMax representative and using an alias—signed “Exhibit Agreements” for both annual meetings in which he acknowledged, among other things, that *626 all .'written, oral, or visual information disclosed at the meetings “is confidential and should not be disclosed to any other individual or third parties” absent written permission from NAF.[1]
4. The individual defendants and several investigators they hired to pose as BioMax representatives also signed “Confidentiality Agreements” that prohibited: (1) “video, audio, photographic, or other recordings of the meetings or discussions at this conference;” (2) use of any “information distributed or otherwise made available at this conference by NAF or any conference participants ... in any manner inconsistent with” the purpose of enhancing “the quality and safety of services provided by” meeting participants; and (3) disclosure of any such information “to third parties without first obtaining NAF’s express written consent.”
5. Notwithstanding these contracts, the defendants secretly recorded several hundred hours of the annual conferences, including informal conversations with other attendees. The defendants attempted in those conversations to solicit statements from conference attendees that they were willing to violate federal laws regarding abortion practices and the sale of fetal tissue.
6. The defendants then made some of the recordings public. After the release of the recordings, incidents of harassment and violence against abortion providers increased, including an armed attack at the clinic of one of the video subjects that resulted in three deaths.
7. The district court issued a preliminary injunction enjoining the defendants from, in contravention of their agreements with NAF, “publishing or otherwise disclosing to any third party”: (1) any “recordings taken, or any confidential information learned, at any NAF annual meetings;” (2) “the dates or locations of any future NAF meetings;” and (3) “the names or addresses of any NAF members learned at any NAF annual meetings.”
8. We have jurisdiction over the defendants’ appeal of that preliminary injunction under 28 U.S.C. § 1292(a)(1). We review for abuse of discretion, Garcia v. Google, Inc., 786 F.3d 733, 739 (9th Cir. 2015) (en banc), and affirm. The district court carefully identified the correct legal standard and its factual determinations were supported by the evidence. Id.; see also Pimentel v. Dreyfus, 670 F.3d 1096, 1105 (9th Cir. 2012) (asking whether the “district court’s application of the correct legal standards was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record”).
9. We add only a few thoughts to the district court’s careful discussion. First, the defendants do not contest that they engaged in misrepresentation and breached their contracts. But, they claim that because the information they obtained is of public interest, the preliminary injunction is an unconstitutional prior restraint. Even assuming arguendo that the matters recorded are of public interest, however, the district court did not clearly err in finding that the defendants waived any First Amendment rights to disclose that information publicly by knowingly signing the agreements with NAF. See Leonard v. Clark, 12 F.3d 885, 889 (9th Cir. 1993). Nor did the district court abuse its discretion in concluding that a balancing of the competing public interests favored preliminary enforcement of the confidentiality agreements, because one may not obtain information through fraud, promise to *627 keep that information confidential, and then breach that promise in the name of the public interest. See Dietemann v. Time, Inc., 449 F.2d 245, 249 (9th Cir. 1971) (“The First Amendment is not a license to trespass, to steal, or to intrude by electronic means into the precincts of another’s home or office.... simply because the person subjected to the intrusion is reasonably suspected of committing a crime.”).
10. The defendants claim that they were released from their contractual obligations because they obtained evidence of criminal wrongdoing. But the district court, having reviewed the recordings, concluded as a matter of fact that they had not. That determination is amply supported by the record. See Pimentel, 670 F.3d at 1105.
11. Our dissenting colleague believes that the district court erred in enjoining the defendants from voluntarily providing the purloined information to law enforcement. But even assuming the dubious proposition that the defendants were entitled to root out what they considered to be illegal activities through fraud and breach of contract, the district court’s finding that they uncovered no violations of the law is a sufficient answer to any right claimed by the defendants.[2]
12. The preliminary injunction places no direct restriction on law enforcement authorities. Rather, it enjoins the defendants from disclosing information to anyone except in response to a subpoena. If law enforcement officials obtain a subpoena, the defendants have agreed in a stipulated Protective Order to notify NAF so that it can decide whether to oppose the subpoena. The preliminary injunction and protective order explicitly provide that NAF may not “disobey a lawful ... subpoena.” The preliminary injunction therefore in no way prevents law enforcement from conducting lawful investigations.
13. The dissent, citing S.E.C. v. O’Brien, 467 U.S. 735, 750, 104 S.Ct. 2720, 81 L.Ed.2d 615 (1984), argues that notifying the target of a third-party subpoena might allow that target to thwart an investigation by intimidating the third party and destroying documents. But O’Brien involves investigations in which a target is unaware of an ongoing investigation and still possesses materials that would be the subject of a subpoena or potential investigation. Id. Here, by contrast, NAF already knows that some law enforcement authorities seek this information, the defendants—not NAF—possess the recordings, and the defendants, who are eager to comply with any subpoena for their own purposes, are hardly likely to destroy the subpoenaed recordings. Moreover, the district court has preserved the recordings.
14. Given the district court’s finding, which is supported by substantial evidence, that the tapes contain no evidence of criminal activity, and its recognition of several states’ ongoing “formal efforts to secure the NAF recordings,” the preliminary injunction carefully balances the interests of NAF and law enforcement. We therefore decline the request by the amici Attorneys General to modify the injunction.
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

. In signing the agreement, Daleiden also falsely affirmed that all information contained in BioMax’s application and other correspondence with NAF was "truthful, accurate, complete, and not misleading.”

. The dissent cites no authority for the proposition that "our system of law and order depends on citizens being allowed to bring whatever information they have, however acquired, to the attention of law enforcement.” Dissent at 3. Even if true, however, the proposition would confer no right on citizens to obtain that information through fraud or breach of contract.